[Civ. No. 5079. First Appellate District, Division Two.—April 28, 1925.]

## CHARLES FAUDA, Appellant, v. C. O. FAUDA, Respondent.

[1] ACCOUNTING — TRANSFER OF BUSINESS WITHOUT VALUABLE CONSIDERATION—SUBSEQUENT MANAGEMENT AND CONDUCT OF BUSINESS BY TRANSFEROR—CONDUCT OF TRANSFEREE—ESTOPPEL.—Where a father, who owned and conducted a drugstore, transferred, without valuable consideration, a two-thirds interest in the store and business to his son, and a one-third interest to a brother, and, after the transfer, with the tacit sanction of the son and brother, continued to manage and conduct the business and deal with the profits arising therefrom in the same manner as before the transfer, until the son asserted ownership of the business, the son was estopped by reason of his conduct to demand an accounting for the period between the making of the transfer and entry into possession of the business by a receiver. (On denial of hearing by supreme court, approval withheld.)

[2] ID.—PRIOR ADJUSTMENT OF ACCOUNTS AND DIFFERENCES—FINDING—EVIDENCE.—In this action for an accounting by the son against the father, the evidence was not legally insufficient to sustain the finding that prior to the commencement of the action the parties had adjusted their accounts and differences.

---

(1) 21 C. J., p. 1219, n. 91.   (2) 4 C. J., p. 877, n. 80.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. H. Crook for Appellant.

Daniel A. Ryan for Respondent.

CABANISS, J., *pro tem.*—Appellant brought action for an accounting. Judgment having gone against him, he moved for a new trial and appealed from an order denying the motion.

A somewhat extended history of the general business dealings between the parties must be given to make clear the issue involved, and later to be determined.

For many years prior to February 2, 1917, respondent owned and operated a drugstore known as the C. O. Fauda Pharmacy, and appellant (respondent's son) and Eugenio Fauda (respondent's brother) were employed therein as salaried clerks and pharmacists, under respondent's direction. During this period the general conduct and management of the business, including the purchase of store stock, banking of moneys received from sales and drawing of checks against the bank funds was in the respondent.

On the date mentioned (February 2, 1917) respondent executed to appellant a bill of sale transferring a two-thirds interest in the drugstore and business, goodwill, business name, leasehold interest, and stock in trade; and at the same time, and in like manner, transferred to Eugenio Fauda the remaining one-third interest. Notwithstanding the form of these instruments it is admitted that they were without valuable consideration and that the transferees acquired their respective interests as gifts. The gift to appellant was absolute and unconditioned, and that to the brother, Eugenio, to become operative only upon respondent's death.

The circumstances attending the execution of the bills of sale and deeds to appellant make it apparent that the impending second marriage of respondent and his desire to safeguard appellant's financial interests in the event of respondent's death were the immediately inducing motives impelling the making of these instruments—a fact within appellant's knowledge from the very outset. It is here also noted that the making of the partnership agreement between appellant and Eugenio Fauda, and herein later to be mentioned, was suggested by respondent.

Immediately upon the execution of the bills of sale appellant and Eugenio Fauda executed an agreement by the terms of which they became copartners in the business and property given them by respondent—appellant contributing to the partnership his two-thirds interest and Eugenio Fauda his one-third interest. The agreement also provided that during the partnership period books be kept, showing money received, paid, and expended, and goods bought and sold by the partners and "all other matters and things whatsoever to the said business and management thereof in any wise belonging." The agreement further provided that annually or oftener, if desired by either partner, an inventory and accounting be made, showing the state of the business, etc.

For more than two years immediately following execution of the bills of sale and partnership agreement, respondent, exactly as theretofore, retained the management and control of the store, in a proprietary way, with the tacit sanction of appellant and Eugenio Fauda, both of whom continued to serve in the place as clerks and pharmacists. For these services they were paid salaries slightly in excess of those received prior to the making of the bills of sale. Respondent contemporaneously with the bills of sale transaction also executed to appellant a gift deed to several parcels of land, the donor, however, reserving (*dehors* the deed) a revocatory right exercisable at his pleasure. The land thus transferred was mortgaged to secure a bank loan made to respondent and from time to time following the bills of sale and deed transactions respondent, with appellant's knowledge, drew money from the store funds with which to make payment upon the debts secured by the mortgage, and in several instances appellant received these payments directly from respondent and personally made them to the bank. At all times prior to February 2, 1917, respondent, then the absolute owner of the store, kept its books and continued to do so until his retirement from the place. Respondent's system of bookkeeping, if "system" it may be called, was most informal, and from the entries recorded it would be quite impossible for anyone, with the possible exception of the bookkeeper, to get a clear or at all satisfactory understanding of the state of the business, profit or loss resulting from its operation, etc. This comment applies to the books as kept both before and following the signing of

the bills of sale, as no change of bookkeeping methods was made during the latter period. The books were available to appellant and Eugenio Fauda and were inspected by them, nor did either ever suggest to respondent a change in the bookkeeping system. The relation of the parties to this action and Eugenio Fauda toward themselves and the business remained uninterruptedly as before stated, until on or about June 20, 1919. Shortly before that date serious differences arose between the wife of plaintiff and appellant's stepmother (respondent's second wife), which incidentally marred the affectionate family relations previously existing between father and son.

At the time last-mentioned respondent revoked the deeds to appellant, who then for the first time asserted his right under the bill of sale by demanding the immediate possession and control of the store as against respondent. The respondent thereupon brought suit against appellant, alleging in his complaint that it was the purpose and intention of the parties to the bill of sale that it be made revocable at respondent's will, and the prayer was for judgment accordingly. By way of defense of said action appellant alleged that the bill of sale became effective upon its execution and transferred absolute title to him and the court so found, but appellant did not therein seek an accounting. In the action last mentioned a receiver was appointed by both parties. The respondent surrendered possession to the receiver on or about June 1, 1919, and the instant action seeks an accounting as to moneys received by respondent from the date of executon of bills of sale, February 2, 1917, until the receiver entered into possession of the store.

[1] The trial court, basing its action upon the facts above presented, found that appellant was estopped from securing an accounting and the action of the court in this behalf is urged by appellant as error.

If upon receiving bill of sale and real property deed appellant had actually said in effect to respondent, "Father, as you have shown your paternal solicitude by protecting me against the possible loss of my patrimony, I, therefore, suggest that you practically retain management and ownership of the store during your lifetime or until such time as I may avail myself of my rights of ownership," and this invitation had been accepted by respondent, surely, in such

72 Cal. App.—30

case appellant would be estopped from maintaining an action for accounting. It may well be that the learned trial judge was of the opinion, as well he may have been, that appellant by his acts, conduct, and omissions as above shown, had to all intents and purposes *spoken* the equivalent of the words quoted. In view of the close blood tie between the parties and under all the circumstances, respondent may well have taken for granted that his possession and management of the store and right to retain store money as his own had been conceded to him by appellant. All the more would he seem to have been warranted in acting upon this assumption because of the omission of the son to exercise acts of ownership or otherwise demean himself as he would have done had it been his purpose to claim the proceeds of the business. In this connection may be instanced appellant's absolute noninterference with the management of the business, his omission to install a bookkeeping system which would show the state of the business and make possible a determination of the profits to be periodically ascertained and paid over to himself and Eugenio Fauda, pursuant to the provisions of their partnership arrangement.

Inasmuch as appellant in his brief stresses the making of the partnership agreement between appellant and Eugenio Fauda as a circumstance tending to support appellant's contention, our only comment is that the execution of the document in the light of all the facts and circumstances does not make against respondent's estoppel contention, but, on the contrary, tends to support it. The partnership agreement, though executed in the sense of having been formally drafted and signed, was to all intents merely executory, in that neither party to the agreement performed or sought to do so under it as they would have done, and especially in the matter of determining profits or losses, had it been their purpose to exercise their rights conferred by the bills of sale. In brief, by reason of the conduct of appellant, respondent was caused to believe, as appellant must well have known he would be, that he (respondent) was to continue to stand for the time being, and until appellant asserted ownership, in the same relation to the store and profits arising therefrom as prior to the bill of sale transfer. This, we think, warranted the trial court in supporting respondent's estoppel plea. The facts of this case bring it clearly within the es-

toppel rule announced in subdivision 3, section 1962 of the Code of Civil Procedure, which is as follows: ''The following presumption, and no others, are deemed conclusive: . . . 3. Whenever a party has, by his own declaration, acts, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief he cannot, in any litigation, arising out of such declaration, act, or omission, be permitted to falsify it.'' In the few lines of this citation we find the quintessence of an ethical rule old as civilized man's conception of fair dealing and natural equity, and applied in innumerable cases.

[2] As what has been said herein is determinative of this appeal, we will but mention another defense interposed by defendant, namely, but the parties hereto had adjusted all accounts and their business differences generally; and further say in this connection that the finding of the lower court supporting this defense is sustained by the evidence. We forbear discussing this phase of the matter at length only because the point already determined herein seems to us absolutely decisive of this appeal.

For the reasons herein stated, the judgment and order denying plaintiff's motion for a new trial are affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 25, 1925, and the following opinion then rendered thereon:

THE COURT.—Appellant's petition to have the above-entitled cause heard and determined by this court after judgment in the district court of appeal of the first appellate district, division two, is denied.

We are not satisfied that the evidence in this case is sufficient to sustain the defense of estoppel, but upon an examination of the record we are of the opinion that the evidence is not legally insufficient to sustain the finding that prior to the commencement of this action the parties hereto had adjusted their accounts and differences.